IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CIV. ACT. NO. 2:03cv1031-MHT |
| | ) | (WO) |
| JOHN THOMAS RILEY, JR. | ) | |

**SUPPLEMENTAL RECOMMENDATION
OF THE MAGISTRATE JUDGE AND ORDER**

## I.  INTRODUCTION

On February 2, 2000, pursuant to a plea agreement, John Thomas Riley, Jr., ("Riley")

entered a plea of guilty to conspiracy to distribute and possess with intent to distribute

cocaine hydrochloride, cocaine base, and marijuana (Count 1), a violation of 21 U.S.C. §§

841(a)(1) and 846; money laundering (Count 3), a violation of 18 U.S.C. § 1956(h)2;

smuggling marijuana (Count 4), a violation of 18 U.S.C. § 545; and unlawful use of a

communications device (Count 13), a violation of 21 U.S.C. § 843(b).

On March 16, 2000, the Government filed a notice of breach of plea agreement based

on Riley allegedly giving either false testimony at the trial of his co-defendants or giving

false statements to law enforcement officers prior to these trials.  A hearing on the alleged

breach of the plea agreement was held on April 3, 2000.  At the conclusion of that hearing,

the court determined that Riley had not breached the plea agreement.  Sentencing was set for

June 22, 2000; however, prior to that proceeding, the United States filed a motion for

reconsideration of the court's denial of the government's request to set aside the plea

agreement because Riley breached it.    On June 23, 2000, the court continued Riley's

sentencing.  Both orally and later in writing the court granted the government's motion for reconsideration, gave notice that it would not accept the plea agreement, and gave Riley the opportunity to withdraw his plea. (Crim. No. 2:99cr137-MHT, Doc. No. 461.)[1]  Sentencing was set for July 12, 2000.  At the commencement of that proceeding, Riley decided not to withdraw his guilty plea and chose to be sentenced without the benefit of any agreement except as to the government's dismissal of all but the four counts to which Riley originally agreed to plead guilty.  At sentencing the court concluded that, even though Riley's guideline range was life imprisonment, a downward departure of one offense level was warranted, and Riley was sentenced to 420 months imprisonment.[2]

Riley filed a direct appeal of his convictions.  *Riley v. United States*, [No. 00-13806-GG] 2001 WL 34137856, *2 (11th Cir. Jan. 10, 2001).  On February 12, 2002, the Eleventh Circuit Court of Appeals affirmed Riley's convictions. (Doc. No. 21, Gov's Ex. 1.)  On October 15, 2003, Riley filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1.)  On October 10, 2005, and on June 7, 2006, Riley filed amendments to his motion. (Doc. Nos. 17, 19, & 34.)  On August 24, 2006, the undersigned Magistrate Judge recommended that Riley's 28 U.S.C. § 2255 motion be denied. (Doc. No.

---

[1] It is not at all clear whether the court actually concluded that Riley breached the plea agreement by committing perjury.  However, it is clear that the court ultimately concluded that it would not accept the plea agreement because the recommended sentence of 21 years did not adequately address the gravity of Riley's criminal conduct.  *See* pp. 9-10 *infra*.

[2] Specifically, Riley was sentenced to 420 months' imprisonment on the conspiracy count; 240 months' imprisonment on the money laundering count; 60 months' imprisonment on the smuggling count; and 48 months' imprisonment on the use of a communications facility count, with the sentences to run concurrently.

41.)  On September 6, 2006, the Court entered an opinion adopting this recommendation. (Doc. No. 43.)

Proceeding *pro se*, Riley appealed this court's denial of the motion to vacate sentence. On December 22, 2008, the Eleventh Circuit Court of Appeals vacated and remanded this court's previous opinion, determining that this court failed to consider all of Riley's claims as required by *Clisby v. Jones*, 960 F.2d 925, 935-36 (11th Cir. 1992).  The Court directed this court to address the following claims:

(1)     Counsel was ineffective for failing to object to the district court's finding that Riley did not qualify for an acceptance of responsibility reduction (raised as Claim 11 of Riley's second amendment to his section 2255 motion).

(2)     The district court erred in enhancing Riley's sentence for obstruction of justice and possession of a gun because the evidence did not support these enhancements; and counsel was ineffective for failing to challenge these enhancements at sentencing or on appeal (raised as Claim 5 of original section 2255 motion and Claims 10 and 12 of second amendment to the section 2555 motion).

(3)     Counsel was ineffective for allowing Riley to plead guilty to money laundering, where he did not take money outside of the United States and thus, was not guilty of the offense (raised as Claim 14 of the second amendment to the section 2255 motion).[3]

(Doc. No. 60.)  This court will now discuss these three claims as instructed.

---

[3] The Court determined that this court failed to discuss the first issue in its entirety and did not adequately discuss the second and third issues in its Recommendation.

## II.  Discussion

### A.  The Issues before the Court

On March 11, 2009, Riley filed a "memorandum in support of issues certified by the 11th Circuit Court of Appeals and additional issues raised pursuant to 28 U.S.C. § 2255." (Doc. No. 63.)  On April 2, 2009, and April 3, 2009, he also filed motions to amend his § 2255 motion to vacate sentence, in which he attempts to submit additional claims.  (Doc. Nos. 65 & 67.)  Thus, the first question for the court to answer is what issues are properly before the court.

When the Eleventh Circuit issues a limited mandate, "'the trial court is restricted in the range of issues it may consider on remand.'"  *United States v. Williams*, 563 F.3d 1239, 1241 (11th Cir. 2009) (quoting *United States v. Davis*, 329 F.3d 1250, 1252 (11th Cir. 2003)). Particularly where the Eleventh Circuit "holds that there is no merit to a party's objections to his sentence other than that for which the court issues a remand, the district court is foreclosed from addressing any of the other sentencing issues previously raised. *Williams*, 563 F.3d at 1241-42 (citing *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996)). Assuming jurisdiction over matters outside the scope of such a mandate constitutes an abuse of discretion.  *Id*.  Moreover, a specific mandate is not subject to interpretation.  *Williams*, 563 F.2d at 1242 (citing *United States v. Mesa*, 247 F.3d 1165, 1170 (11th Cir. 2001)).

In this case, the Eleventh Circuit issued a limited mandate requiring this court to address the following issues: (1) counsel was ineffective for failing to object to the district

court's finding that Riley did not qualify for an acceptance of responsibility reduction; (2) the district court erred in enhancing Riley's sentence for obstruction of justice and possession of a gun because the evidence did not support these enhancements, and counsel was ineffective for failing to challenge these enhancements at sentencing or on appeal; and (3) counsel was ineffective for allowing Riley to plead guilty to money laundering, where he did not take money outside of the United States and, thus, was not guilty of the offense. Therefore, this court will not consider any additional claims or issues raised by Riley because they are outside the scope of the Court's mandate.  Consequently, to the extent Riley attempts in his memorandum (Doc. No. 63) and motion to amend (Doc. Nos. 65 & 67) to raise additional claims which are outside the scope of the mandate, his request is due to be denied.

## B.  Sentence Enhancements

Riley claims that the trial court erred in enhancing his sentence because the evidence did not sufficiently establish that he obstructed justice or possessed a gun.[4] The Government argues that Riley's claim is procedurally defaulted as he failed to raise this claim on direct appeal.  *United States v. Frady*, 456 U.S. 152 (1982); *Murray v. Carrier*, 477 U.S. 478 (1986); *Hill v. Jones,* 81 F.3d 1015 (11th Cir. 1996).  In light of the Court's mandate to address this specific claim and because there is no substance to the defendant's constitutional claims, the court pretermits discussion of the procedural default issue.  *See United States v. Nyhuis,* 8 F.3d 731, 744 (11th Cir. 1993) (holding that a federal court may decline to decide

---

[4] *See Riley v. United States*, No. 06-15546 (11th Cir. Dec. 22, 2008), in which the Court construed Riley's challenges to the enhancements as "claims . . . based on lack of evidence."

5

a procedural default issue if after considering the merits it is apparent there is no substance

to the constitutional claim); *Smith v. Dugger*, 840 F.2d 787, 791 (11th Cir.1988).

During the sentencing proceeding, the court determined that an enhancement based

on obstruction of justice was warranted.  Specifically, the court found as follows:

> The Court finds that Riley did obstruct justice.  The Court finds that he perjured himself on at least one or more occasions.  The Court has had an opportunity to review parts of the transcripts. . . .  The Court finds that Riley intentionally perjured himself when he said that the six and a half – well, actually on page 23 of Volume II of the Clay trial, lines – beginning on line 12 where he mentions four and a half, at trial he said that could either be money or marijuana.  The Court credits the testimony of Agent Barnes that prior to trial Riley said that that was just marijuana.

> And with regard to the six and a half reference on page 31 of the same transcript, starting at line 17, again, Riley perjured himself.  Told Barnes before trial that it was marijuana, and then he changed his testimony at trial to say it was money or marijuana.

> On page 31, starting at line 1, where Riley claims that – where Clay says, boy, you can't give that stuff away or that thing away, he stated at trial that he didn't know what Clay was talking about; but he told Agent Barnes before trial that Clay was talking about marijuana.  Riley again perjured himself.

> On page 33 of the same transcript, line 9, Riley denies that he told Agent Barnes or anyone else that Clay – that he gave Clay eight pounds of marijuana where in fact he had told Agent Barnes quite the contrary before trial, that he had given Clay eight pounds of marijuana.  Riley again perjured himself.

> On page 126 of the same transcript, Riley denies that he had any drug dealings with Clay.  Again, he perjured himself.  Riley in fact had drug dealings with Clay.  As the evidence at the trial reflected and the evidence before me reflects, Clay did sell drugs for Riley.  I'm particularly concerned about where Riley says Clay did not sell drugs for him when in fact Clay did sell drugs for him.  I credited the testimony of Agent Barnes.

(Sentencing Transcript, R. 540-41.)

The Government has the burden of proving that a § 3C1.1 enhancement for obstruction of justice is applicable. *United States v. Cataldo*, 171 F.3d 1316, 1321 (11th Cir. 1999). If a defendant challenges one of the factual bases of his sentence, the Government must prove the disputed fact by a preponderance of the evidence. *Id.*

The Guidelines provide that a court is authorized to assess a two-level enhancement if "the defendant willfully obstructed . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense conviction." U.S.S.G. § 3C1.1 (Nov. 1998). To warrant an enhancement for obstruction of justice, false evidence provided by the defendant must be material. *Id.* at comment. (n.6). Material matters include those that "would tend to influence or affect the issue under determination." *Id.*

Included in the "non-exhaustive list of examples of types of [obstructive] conduct" are (1) perjury, (2) providing a materially false statement to a law enforcement officer that significantly obstructs or impedes the official investigation or prosecution, and (3) providing materially false information to a probation officer in respect to a presentence investigation for the court. *Id.* at comment. (n.4.). Perjury occurs when a witness, testifying under oath, "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

In this case, the court found that Riley obstructed justice, specifically identifying

multiple instances where he committed perjury at trial. The sentencing transcript indicates that Agent J. W. Barnes testified concerning inconsistencies between Riley's statements to him during the course of the pretrial investigation and his testimony during Sonja Brown's trial. (Sentencing Transcript, R. 462-492.) The court's determination that Agent Barnes' testimony was credible is entitled to great deference. *See United States v. De Carty*, 300 Fed. Appx. 820, 831 (11th Cir. 2008) (citing *United States v. Lewis*, 115 F.3d 1531, 1538 (11th Cir. 1997). This court has reviewed the transcript in the criminal case, including Riley's testimony at trial and Agent Barnes' testimony at sentencing. Riley's testimony concerning the co-defendants' involvement in the drug crimes was markedly different from his statements to Agent Barnes. Thus, the Government established by a preponderance of the evidence that Riley committed perjury by "giving false testimony concerning a material matter with the willful intent to provide false testimony."[5] *Dunnigan*, *supra*. The evidence was more than sufficient to support a sentence enhancement for obstruction of justice.

Riley also argues that the court erred when it applied the two-level enhancement for possession of a dangerous weapon in connection with a drug transaction under U.S.S.G. § 2D1.1(b)(1) (Nov. 1998).

During the sentencing proceeding, this court entered the following findings:

---

[5] If the court were to assume *arguendo* that Riley did not perjure himself at trial, the evidence would then demonstrate that he gave materially false information to the drug enforcement agent during the course of his investigation of the case. *See United States v. Pouncy*, 71 Fed. Appx. 229 (4th Cir. 2003) (defendant who initially gave false information to ATF special agents found to have obstructed justice); *United States v. Cover-It, Inc*., No. 99-1789, 234 F.3d 1263 (2nd Cir. Nov. 7, 2000) (Table) (enhancement for obstruction of justice warranted where defendants provided false information to EPA agents).

THE COURT:      . . .   The gun possession matter, the two-point enhancement for gun possession should be kept.  The guns which were found in both his homes were directly related to his overall drug scheme.  They were used for the purpose of maintaining that drug scheme.  And I believe you said one gun had actually been purchased by him; is that correct?

MR. FRANKLIN:  That is correct, Your Honor.  In August of 1996.

THE COURT:     The Court finds that that gun was purchased by Mr. Riley in 1996 and was used as part of his drug transactions.  The guns were found in his house or in his – actually both houses.  They were directly connected with his drug activities.  He had a big operation, and he needed to protect that operation.

(Sentencing Transcript, R. 538-39.)

The Guidelines provide for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during certain drug offenses.  U.S.S.G. § 2D1.1(b)(1) (Nov. 1998).  The enhancement for weapon possession should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. §2D1.1 comment.  n. 3 (Nov. 1998).   Once the Government shows by a preponderance of the evidence that a firearm was present, "the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable."  *United States v. Hansley*, 54 F.3d 709, 716 (11th Cir. 1995).  A connection is shown where the "firearm is possessed during conduct relevant to the offense of conviction." *United States v. Linh Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006).  Thus, the enhancement applies if firearms were found in a place where acts occurred in furtherance of the

9

conspiracy. *Id. See also United States v. Godwin*, 296 Fed. Appx. 744, 750 (11th Cir. 2008)

(firearms found in yard and shed were related to defendant's continued drug transactions).

The record indicates that several guns were found in Riley's residence and stash house

and that these houses were connected with his drug activities. In its opinion affirming the

conviction of a co-defendant, Clarence Clay, the Court summarized the facts as follows:

> John W. Barnes ("Agent Barnes") is a Senior Special Agent with the United States Customs Service. At the time of the events in this case, Agent Barnes was assigned to the High Intensity Drug Trafficking Area ("HIDTA") task force in Montgomery, Alabama. The HIDTA task force is a federally funded investigative task force composed of federal, state, and local law enforcement officers. HIDTA's stated mission is to locate, identify, and dismantle drug smuggling/trafficking organizations.

> In December 1997, Agent Barnes received a request from Bill Baker ("Agent Baker"), a fellow Customs agent in Cincinnati, Ohio, seeking information about an individual by the name of "John Riley" in Montgomery, Alabama. Agent Barnes requested and received information from the Montgomery Police Department, which he forwarded to Agent Baker in Cincinnati. Agent Barnes confirmed that the John Riley, who was the subject of Agent Baker's interest, was also the John Riley identified through the Montgomery Police Department. Thereafter, Agents Barnes and Baker began working together in a narcotics investigation that impacted Alabama and Kentucky.

> In April 1998, Tony Montoya ("Montoya"), a cooperating individual ("CI"), assisted Agents Barnes and Baker, along with others, in arranging a controlled meeting between Montoya and Riley. The purpose of the meeting was for Riley to deliver money to Montoya for marijuana that had previously been delivered to Riley. When the meeting occurred, Agent Barnes and others through the use of surveillance equipment were able to monitor Riley giving Montoya $77,500. In addition to

monitoring Riley, the agents monitored the money that Riley gave to Montoya as it left Montgomery and traveled across the border into Mexico through Laredo, Texas. The following month, a second delivery occurred. After arriving in Montgomery, Montoya contacted Riley via pager and cell telephone. Agent Barnes supervised these contacts. Again, the agents set up surveillance in an adjoining hotel room and monitored the delivery of approximately $60,000 by Riley to Montoya. Montoya continued to provide agents with information about Riley and his contacts outside the district.

Unable to identify Riley's local co-conspirators, Agent Barnes decided to obtain pen registers for Riley's cellular telephone with the hopes of obtaining authorization to intercept Riley's telephone conversations. Records obtained through subpoena revealed that Clay subscribed to the cellular telephone number used by Riley to communicate with Montoya and other CIs, and the cellular phone bills went to Clay's home address at 1030 Lynwood Drive, Montgomery, Alabama. Based on this information about the unlawful use of the cellular telephone subscribed to by Clay, the government sought and obtained a wire tap order. On June 3, 1999, eleven days into the wire tap, agents intercepted a conversation between Clay and Riley. During this conversation, Clay complained about the poor quality of the marijuana and his inability to sell it. Riley tried to relieve Clay's anxiety by promising to pick up the marijuana and give him some new marijuana when the next shipment came in. Additionally, Clay and Riley used numbers that were consistent with those used by Riley in a conversation with unindicted co-conspirator, Louis Calvin Cook ("Cook"), when Riley and Cook talked about marijuana.

When Riley realized that he was being followed by agents, he met with Clay and gave him the cellular telephone. Clay took the cellular telephone to a local Powertel office and changed the number. Additionally, Clay specifically requested that the SIM card (i.e., a computer chip that identifies the phone number with that card) be changed, resulting in the termination of the first court authorized wiretap for that particular cellular telephone. While in possession of the cellular telephone, Clay

11

answered the telephone and identified himself as Riley's
"partner" and promised to deliver a message to Riley. After
changing the number to the aforementioned cellular telephone,
Clay returned it to Riley.

On July 15, 1999, agents executed several search
warrants at locations associated with Riley, including Clay's
residence at 1030 Lynwood Drive, Montgomery, Alabama. The
agents also searched Riley's stash house at 1702 French Street,
Montgomery, Alabama, and Riley's main address at 5713
Portsmouth Drive, Montgomery, Alabama. Agents seized
several firearms from each of these locations (i.e., two from
Clay's residence, eight from Riley's home residence, and four
from Riley's stash house).

The evidence produced at trial demonstrated that Clay
was the subscriber for the telephone that Riley used to conduct
his drug trafficking business from 1996 to 1999 through which
Riley possessed and distributed thousands of pounds of
marijuana, more than fifty grams of cocaine base, and four
kilograms of cocaine hydrochloride. During the trial, the
government also presented the testimony of co-conspirator
Roderick Blanding ("Blanding"), who testified that he worked
for Riley. According to Blanding, Clay was one of Riley's
regular customers.

*United States v. Clay*, 376 F.3d 1296, 1298 -1299 (11th Cir. 2004). Thus, the evidence at trial

sufficiently established that Riley had an interest in protecting his "big operation" with

firearms found in his residence and stash house and that these weapons were "found in a

place where acts occurred in furtherance of the conspiracy." *Pham*, *supra*. Riley has

presented no evidence suggesting that a connection between the firearms and the drug

conspiracy was clearly improbable. *Id*. This court therefore concludes that the two-level

enhancement for possession of a firearm was properly applied in this case.

### C.  Ineffective Assistance of Counsel

### 1.      General Principles

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  The petitioner must satisfy the requirements of a two-pronged test to prevail on his claim of ineffective assistance of counsel.  The petitioner first must make a threshold showing that his attorney's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, at 688.  In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance.  *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) quoting *Strickland,* at 687.  The burden of proving by a preponderance of the evidence that counsel's performance was unreasonable is a heavy one.  *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).  Once this threshold test of unreasonableness is met, the petitioner must then show that the deficient performance of his counsel prejudiced his defense. *Strickland*, supra at 687.  To establish prejudice, the petitioner must first show that there is "a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."  *Strickland* at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  [T]hat the

errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000)(quoting *Strickland*, 466 U.S. at 693). The prejudice component of the *Strickland* test focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law titles him. *Williams v. Taylor*, 529 U.S. 362, 393 n. 17 (2000).

Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel *at the time of the representation. United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992). There is a strong presumption that counsel's performance was reasonable and adequate, and great deference must be shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384,386 (11th Cir. 1994). A strategic or tactical decision by counsel amounts to ineffective assistance only if it is so "patently unreasonable a . . . decision that no competent attorney would have chosen" it. *Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001). Indeed, "[s]surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ___, ___ (2010).

> Trial counsel's performance is entitled to " 'highly deferential' judicial scrutiny." *Fugate v. Head*, 261 F.3d 1206, 1216 (11th Cir.2001) (citation omitted). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. This Court en banc established this guideline: "To state the obvious: the trial lawyers, in every case, could have

14

done something more or something different. So, omissions are inevitable....
[T]he issue is not what is possible or 'what is prudent or appropriate, but only
what is constitutionally compelled.' " *Chandler v. United States*, 218 F.3d
1305, 1313 (11th Cir.2000) (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776,
794, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). Thus, under federal law,
there is "a strong presumption in favor of competence [and] the petitioner's
burden of persuasion--though the presumption is not insurmountable--is a
heavy one." *Chandler*, 218 F.3d at 1314 (footnote and citations omitted); *see
also Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (noting that courts
must "indulge [the] strong presumption" that counsel's performance was
reasonable and that counsel "made all significant decisions in the exercise of
reasonable professional judgment"). Accordingly, this Court "must recognize
that counsel does not enjoy the benefit of unlimited time and resources," and
that "[e]very counsel is faced with a zero-sum calculation on time, resources,
and defenses to pursue at trial." *Chandler*, 218 F.3d at 1314 n. 14.

*Turner v. Crosby*, 339 F.3d 1247, 1275-76 (11th Cir. 2003).

A criminal defendant's right to effective assistance of counsel continues through

direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of

appellate counsel may be shown if the movant can "establish ... that counsel omitted

significant and obvious issues while pursuing issues that were clearly and significantly

weaker....  Generally, only when ignored issues are clearly stronger than those presented, will

the presumption of effective assistance of counsel be overcome."  *Mayo v. Henderson*, 13

F.3d 528, 533 (2nd Cir. 1994).

## 2.    The Sentencing Enhancements

Riley contends that trial and appellate counsel were ineffective for failing to challenge

the sentencing enhancements for possession of a weapon and obstruction of justice.  The

addendum to the pre-sentence report indicates that trial counsel objected to an adjustment for

15

obstruction of justice.[6]  (Gov's Ex. 4, Addendum at ¶ 21.)  As previously discussed, Riley's contention that the evidence failed to support a sentence enhancement for gun possession and obstruction of justice is without merit.  Consequently, Riley has not established that his counsels' failure to challenge the enhancements for gun possession and obstruction of justice at trial or on appeal fell below an objective standard of reasonableness and prejudiced his case.  *See Strickland*, *supra*.

### 3.    Acceptance of Responsibility

Riley asserts that trial counsel was ineffective for failing to object to the denial of a three point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b).  Specifically, he contends that he accepted responsibility because he discussed the details of the case with Agent Barnes and testified during the trials of Sonja Brown and Clarence Clay.  (Doc. No. 34, pp. 13-14.)

---

[6] Trial counsel objected on the following basis:

The allegation that Mr. Riley breached his agreement with the government are the same allegations which Judge Thompson received testimony upon the hearing held on the government's claim of breach of the plea agreement.  Judge Thompson ruled that Mr. Riley had not breached his agreement.  If Riley had in fact obstructed justice, defense counsel submits that the sentencing court would have ruled that Mr. Riley had breached his agreement with the government.  Mr. Riley's position is that Judge Thompson's ruling has already precluded the government's claim that Mr. Riley perjured himself in those trials.  Defense counsel observed for the record that Riley was called to testify first in the Brown trial by the defense; however, in the trial following (the Clay trial), Riley was called to testify by the government.  The government should be stopped from claiming perjury in the Brown trial when it called him as his witness in the Clay trial and vouched for Riley's credibility.  (Gov's Ex. 4, Addendum at ¶ 21.)

The Guidelines provide for two separate reductions for acceptance of responsibility:

(a)    If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b)    If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1)    timely providing complete information to the government concerning his own involvement in the offense; or

(2)    timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.

"The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea." *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999). "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, comment. (n. 4). "The sentencing judge is in a unique position to evaluate a defendant's

acceptance of responsibility.  For this reason, the determination of the sentencing judge is entitled to great deference. . . ."  U.S.S.G. § 3E1.1, comment. (n. 5).

As previously discussed, the evidence amply established that Riley gave false testimony concerning a material matter.  Specifically, Riley's testimony concerning the co-defendant's involvement in the drug crimes was materially different from the relevant information he provided to Agent Barnes.  In light of the obstruction of justice enhancement and Riley's failure to show extraordinary circumstances, the court concludes that a reduction for acceptance of responsibility was unwarranted in Riley's case.  *See*, *e.g.*, *United States v. McKay*, 300 Fed. Appx. 739, 741 (11th Cir. 2008) (holding that sentencing court had sufficient foundation to find that defendant falsely denied relevant conduct and that, despite his plea, he did not accept responsibility for his crime); *United States v. Minton*, 283 Fed. Appx. 774, 778 (11th Cir. 2008) (where defendant acted in a way inconsistent with acceptance of responsibility by falsely denying relevant conduct that the district court determined to be true, court did not clearly err by denying a reduction under § 3E1.1(a)); *United States v. Mendoza*, 252 Fed. Appx. 265, 268 (11th Cir. 2007) (determining sentencing court did not err in determining that acceptance of responsibility reduction was not warranted in light of obstruction of justice enhancement and defendant's failure to show extraordinary circumstances).  Consequently, Riley has failed to demonstrate that trial counsel's failure to challenge the court's determination that a downward adjustment for acceptance of responsibility fell below an objective standard of reasonableness and prejudiced his case.  *See*

*Strickland*, *supra*.

### 4.    Money Laundering

Riley asserts that trial counsel was ineffective for allowing him to plead guilty to money laundering, where he did not take money outside of the United States and thus, was not guilty of the offense.[7]   Riley was neither charged with, nor plead guilty to, money laundering;  he was, however, charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

Because Riley was charged with conspiracy to commit money laundering, the Government was not required to establish that Riley was the individual who took money outside the United States.  "'To obtain a conviction for a ... money laundering conspiracy ... the government bears the burden of proving beyond a reasonable doubt that: (1) two or more persons agreed to commit a crime, in this case a ... money laundering violation; and (2) that [the defendant], knowing the unlawful plan, voluntarily joined the conspiracy.'" *United*

---

[7] In his counseled amendment to his § 2255 motion, Riley's claim and argument in its entirety is as follows:

> GROUND FOURTEEN: The guily [*sic*] plea was based on deficinet [*sic*] actions of advice of Mr. Teague which resulted in a plea of guilty to count three of the indictment which was an unintelligent and unvoluntary [*sic*] plea of guilty to money laundering violations.

> SUPPORTING FACTS: The Petitioner stated that the money was being taken from the United States to outside the United States, however this statement was incorrect, because the money was never being taken outside of the U.S. by the Petitioner, the money was taken from Montgomery, Alabama to Texas and exchanged for marijuana.  Counsel Teague and/or the court never explained the violation of Title 18 U.S.C. § 1956(h) to the defendant.

(Doc. No. 34, pp. 15-16.)

*States v. Martinelli*, 454 F.3d 1300, 1310 (11th Cir. 2006) (quoting *United States v. Johnson*,

440 F.3d 1286, 1294 (11th Cir. 2006)).

In Count Three of the superseding indictment, Riley was charged as follows:

> . . . John Thomas Riley, Jr., and Shirley Moncrief a/k/a Shirley Riley did knowingly and willfully combine, conspire, confederate with each other and diverse other persons, known and unknown to the Grand Jury, to knowingly transport, and cause to be transported, monetary instruments, to wit: United States currency, from a place in the United States, that is, Montgomery, Alabama, to a place outside the United States, that is, Mexico, proceeds of a specified unlawful activity, that is the conspiracy to distribute and distribution of a controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 846, as set forth in Count I above, which is realleged as though fully set forth herein, with the intent to promote the carrying on of a specified unlawful activity, and to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of a said specified unlawful activity, and to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of a said specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and (B)(i).
>
> All in violation of Title 18, United States Code, Section 1956(h) and Section 2.

(Attach. to Doc. No. 73, Gov's Ex. 1, pp. 3-4.)

During the change-of-plea proceeding, both Riley and defense counsel acknowledged

that they had reviewed the charges in the superseding indictment.  (February 2, 2002 Change-

of-Plea Proceeding Transcript, Vol. 4, R. 27.)  Moreover, after the court read the charges in

the superseding indictment to the defendant, Riley indicated that he understood the charges

against him, including the charge of conspiracy to commit money laundering.[8]  (*Id*., R. 32-

34.)  A factual basis for entry of Riley's plea of guilty to conspiracy to commit money

laundering was also established as follows:

> MR. FRANKLIN [Prosecutor]: As to count three of the indictment, Mr. Riley, during the time frame that I've just spoken about, which would be November of '96 up until August of 1999, you acquired marijuana from certain individuals who lived in Mexico, is that correct?
>
> THE DEFENDANT: That's correct.
>
> MR. FRANKLIN: And there was an agreement between you and these individuals that they would give you the marijuana, you would then sell the marijuana here in Montgomery and elsewhere, and return the proceeds from the sale of that marijuana to the individuals in Mexico?
>
> THE DEFENDANT: That's correct.
>
> MR. FRANKLIN: And individuals who assisted you in doing that at that time would have been an individual by the name of Tony Montoia, is that correct?
>
> THE DEFENDANT: Yes, that's correct.
>
> MR. FRANKLIN: And on one occasion an individual by the name of Danny Jackson.

---

[8] The court also summarized the charge in layman's terms.  The following occurred:

> THE COURT:  You were hiding this money, that is the proceeds from your unlawful activity, you understand that?  By taking this money from the United States to outside the United States, you understand that?
>
> THE DEFENDANT: Yes, sir.

(Change-of-Plea Proceeding Transcript, Vol. 4, R.  33-34.)

>THE DEFENDANT: That's correct.
>
>MR. FRANKLIN: It was agreed between you all that that's how the money would be delivered back to the individuals in Mexico, that it would be smuggled in vehicles from Montgomery, Alabama out to Texas, and eventually over into Mexico as payment for the marijuana that had previously been sent to you.
>
>THE DEFENDANT: Yeah, that's correct.   The individual resided in both Texas and Mexico.

(February 2, 2002 Change-of-Plea Transcript, Volume 4, R. 48-49.)  In response to further questioning, Riley also testified that he knew the marijuana "originated in Mexico," that the individuals he "dealt with were from Mexico," that he ordered the marijuana from Mexico but sometimes the individuals "would call from Texas," and "on at least one occasion" he visited two individuals in Mexico to discuss the marijuana that was being shipped to him in Montgomery from Mexico.  (*Id*., R. 51-52.)  This court therefore concludes that, during the guilty plea proceeding, Riley's admissions established that he and other persons, reached an agreement to commit the crime of money laundering through the transportation of the proceeds of an unlawful activity, namely drug trafficking, and that Riley voluntarily participated in that agreement. Consequently, Riley has failed to demonstrate that his counsel's failure to discourage him from pleading guilty to violating 18 U.S.C. § 1956(h) by explaining the charge differently to him fell below an objective standard of reasonableness and prejudiced his case. *See Strickland*, *supra*.[9]

---

[9] To the extent Riley asserts that the court did not adequately explain the conspiracy to commit money laundering charge to him, his claim is procedurally defaulted as he failed to raise this claim on direct

### III. Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the motion to vacate be denied as the claims presented therein entitled the defendant to no relief.   It is further

ORDERED that to the extent Riley attempts in his memorandum (Doc. No. 63) and motions to amend (Doc. Nos. 65 & 67) to raise additional claims which are outside the scope of the mandate, these motions be and are hereby DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before April 19, 2012**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual

---

appeal.  Moreover, his assertion is not cognizable in a § 2255 motion.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea."). *See also Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir. 1991) ("The defendant does not necessarily need to be told the nature of the offense and elements of the crime at the actual plea proceeding; a knowing and intelligent guilty plea may be entered on the basis of the receipt of this information, generally from defense counsel, before the plea proceedings.") (citation omitted) (abrogated on other grounds by *United States v. Garey*, 540 F.3d 1253 (11th Cir. 2008).

23

findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 5th day of April, 2012.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

24